Bennet F. SCHAUFFLER, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

LOCAL 101, MARINE ENGINEERS BENEFICIAL ASSOCIATION, AFL–CIO, Respondent.

No. 27643.

United States District Court
E. D. Pennsylvania.

Feb. 17, 1960.

Bennet F. Schauffler, Charles B. Slaughter, Washington, D. C., for petitioner.

Wilderman & Markowitz, Philadelphia, Pa., for respondent.

WOOD, District Judge.

This cause came on to be heard upon the verified petition of Bennet F. Schauffler, Regional Director of the Fourth Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (herein called the Act), 29 U.S.C.A. § 160(*l*), pending the final disposition of the matters involved herein pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondent filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held beginning on February 8, 1960. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issue, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court makes the following:

Findings of Fact.

1. Petitioner is Regional Director of the Fourth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about January 15, 1960, Gellenthin Barge Line, Inc. (herein called Gellenthin), pursuant to the provisions of the Act, filed a charge with the Board alleging, *inter alia*, that Local 101, Marine Engineers Beneficial Association, AFL–CIO, a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii), subparagraph (B), of the Act, 29 U.S.C.A. § 158(b) (4) (i, ii) (B).

3. The aforesaid charge was referred to petitioner as Regional Director of the Fourth Region of the Board.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent, an unincorporated association, is an organization which participates in and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work. We find as a fact limited to the evidence in this case that it is a "labor organization" within the meaning of Sections 2(5), 8(b) (4) (i, ii) (B) and 10(*l*) of the Act, 29 U.S.C.A. §§ 152(5), 158(b) (4) (i, ii) (B), 160(*l*).

(b) Respondent maintains its principal office at Philadelphia, Pennsylvania, and at all times material herein respondent has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its members.

(c) Gellenthin, with its principal offices and operating base located at Paulsboro, New Jersey, is engaged in the transportation and delivery of petroleum products by tug boats and barges for various concerns and persons engaged in industries affecting commerce, including Esso Standard Oil Company, Sinclair Refining Company, Allied Oil Co., Expressway Oil Terminal, Calso Oil Co., and Consumers Oil Co. (herein respectively called Esso, Sinclair, Allied, Expressway, Calso, and Consumers). In the operation of its business, Gellenthin annually receives, transports, and delivers petroleum products between points in and points outside the State of Pennsylvania, across State lines, valued at in excess of $50,000 and for these services Gellenthin annually receives gross income exceeding $50,000.

(d) Esso, Sinclair, Allied, Expressway, Calso, and Consumers, each an-

nually sells and ships products valued at in excess of $50,000 across State lines in interstate commerce.

(e) Since prior to January 4, 1960, respondent has demanded that Gellenthin recognize and bargain with it as indicated by telegram dated December 31, 1959.[1]

(f) Respondent has not been certified as the representative of the licensed engineer and assistant engineer under the provisions of Section 9 of the Act, 29 U.S.C.A. § 159.

(g) At no time material herein has respondent had any labor dispute with Esso, Sinclair, Allied, Expressway, Calso or Consumers, or any other employer who does business with Gellenthin.

(h) Since on or about January 4, 1960, respondent, in furtherance of the demand for recognition and bargaining, referred to in findings of fact 4(e) above, although it has no dispute with Esso, Sinclair, Allied, Expressway, Calso, or Consumers, has picketed at the premises of Esso, Sinclair, Allied, Expressway, Calso and Consumers while Gellenthin's barges and tugs, including the "Franklin", were at such premises making pick-ups and deliveries.

(i) Objects of the acts and conduct of respondent set forth in findings of fact 4(h), were and are (1) to force or require Esso, Sinclair, Allied, Expressway, Calso, Consumers, and other persons, to cease using, selling, handling, transporting, or otherwise dealing in the products of and to cease doing business with Gellenthin; and (2) to force or require Gellenthin to recognize and bargain with respondent as the representative of engineers employed by Gellenthin, although said respondent has not been certified as the representative of such employees under the provisions of Section 9 of the Act.

(1) The acts and conduct of respondent set forth in findings of fact 4(h) and (i) above, occurring in connection with the operations of Gellenthin, have a close, intimate, and substantial relation to trade, traffic, and commerce among the several States and trend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

5. At the time of this dispute Gellenthin operated four tugs and five barges and employed two engineers (NT10).

6. Nine separate locations in the Philadelphia-New Jersey area were affected by this picketing (NT12). Also, eight truck entrances were involved where land picketing was carried on as distinguished from picketing by boat (NT93).

7. The land picketing was as far as 1,000 feet from the dock area where the refineries and storage tanks were located and could not be seen from the dock area where Gellenthin was rendering service to his customers (NT19).

8. The picketing had an adverse effect on the business of Gellenthin (NT29, 30).

9. While the engineers involved in this dispute were hired on the tug "Franklin" there was no substantial difference in the tugs operated by Gellenthin except as to size. In the normal course of business the smaller tugs would not require the services of an engineer (NT36).

---

[1]. "Gellenthin Barge Lines Inc.
East Broad St Mantua Creek Paulsboro N Jer
"This Is To Advise You That We Represent The Majority Of Your Engineers We Therefore Are Requesting Gellenthin Barge Line To Meet With This Union Immediately In Order That We May Negotiate A Collective Bargaining Agreement On Behalf Of The Engineers Employed By Gellenthin Barge Lines Inc. It Is Imperative That Your Company Reply Immediately Due To Recent Unfair Labor Discharge Of James Smith Please Reply To Local 101 Marine Engineers Beneficial Association Marine Building Corner Of Delaware Avenue And South Street Philadelphia 47 Pa Phone Number Walnut 5 9984 Night Phone Haddon Heights N J Lincoln 7 9650.
"Gordon Spencer Vice President Local 101 Marine Engineers Beneficial Assn."

10. At all times that there was picketing, whether by boat or on land and whether legal or illegal, there was a barge or tug of Gellenthin at or near the "situs" except on one occasion, and then it was a tug under the control of Gellenthin by virtue of a lease or contract (NT37).

11. While there was picketing at the truck entrance a considerable distance from the "situs" no trucks of secondary or tertiary employers refused to cross the picket line (NT42).

12. Signs were exhibited at all times by the respondent indicating clearly that they had no labor grievance with any other employer except Gellenthin (NT28).

13. There was simultaneous picketing by boat and at the truck entrances (NT91).

### Discussion.

This proceeding for injunctive relief under Section 10(*l*) of the National Labor Relations Act, as amended, was instituted by Bennet F. Schauffler, Regional Director of the Fourth Region of the National Labor Relations Board, on February 2, 1960, at which time the undersigned granted a rule to show cause, returnable February 8, 1960, at 2 p. m. An answer was filed by the respondent in which they denied some of the allegations but more particularly raised under first defense, the question as to whether or not the respondent was a labor organization within the meaning of the Act which we will discuss more in detail later. Testimony was taken on February 8 and 9, 1960, followed by argument and adequate briefs in support of the respective positions of the parties. We believe that there are five essential issues involved in this case as follows:

1. Is the respondent a labor organization?

2. Is failure to be certified under Section 9 relevant?

3. May the respondent picket tugs and barges of Gellenthin other than the "Franklin"?

4. Was the picketing legal?

5. Is there reasonable cause to grant injunctive relief pending further investigation by the Board?

■ ▪The facts in this case are not too clearly developed on the question of whether or not respondent is a labor organization but we conclude that in this case they are. There is evidence that the two engineers could be employed on one boat and one engineer would be in charge of the other as well as of the equipment. There is also evidence that engineers could be hired and used in inferior jobs such as deckhands or other ship employees. In any event, we feel bound by the excellent decision of Judge Friendly in National Marine Engineers Beneficial Association, A.F.L.–C.I.O. v. N. L. R. B., 2 Cir., 274 F.2d 167.

As to whether or not the respondent was certified, we conclude that that is immaterial to the issues in this case. At the hearing we attempted to develop this point from counsel but were given the definite impression, as indicated on pages 80 and 81, that both parties agree that this case can be disposed of satisfactorily to both parties without passing on that question. We therefore find that it is immaterial to the issue before the Court and pass to the next problem.

■ Counsel for petitioner has argued vigorously and cited five different reasons in his supplemental brief to support his theory that since only engineers were employed on the "Franklin" that therefore this picketing should be restricted to that single tug. On the other hand, respondent argues that since the dispute is with the employer it involves all of his equipment and that the "situs" of the dispute can be determined where any of his equipment may be located, regardless of whether engineers are employed on any or all of the tugs and barges. Neither counsel has been able to supply the Court with any case directly meeting the facts before us, nor have we been able to find one exactly in point. However, respondent does refer to N. L. R. B. v. General Drivers, etc., Local 968, 5 Cir., 1955, 225 F.2d 205. While

that case is somewhat helpful we do not believe that it precisely meets the facts before us. We feel that it would be most unreasonable to limit lawful picketing to the tug "Franklin" alone. We cannot escape the conclusion that where a controversy exists as here between what we have held to be a labor organization and an employer it involves all of the normal equipment used by that employer in the conduct of his business; and that therefore the four tugs and five barges operated by the employer Gellenthin may legally be picketed.

■ As we have previously said, and as we understand the parties agree, the crucial question involved in this controversy is whether this picketing was legal. At the outset, we note that both parties rely on the Moore Drydock case (92 N. L. R. B. 547) wherein four criteria were set down[2] which we find applicable and material to the issue in the case at bar. The Court finds that the third limitation demanded by that case has not been followed by the respondent here. Admittedly, respondent took every possible precaution before instituting his picketing but we do not think that it is reasonable to picket at the truck entrances more than 1,000 feet away from the pier and out of sight of the equipment of the employer, particularly when at the same time picketing by boat is going on at the pier and adjacent to and within the sight of other ships using the facilities of the neutral employer. Complete and effective results of the picketing were obtained as in the situation where the employer was bunkering the ship "Cuyoga". Some effective curtailment of the right to picket we think is fair to both parties and within the purposes of the Act. Both parties here have argued vigorously the provisions of Seafarers International Union of North America,

Atlantic & Gulf Dist., Harbor and Inland Waterways Division, A.F.L.–C.I.O. v. N. L. R. B. (Salt Dome Production), 1959, 105 U.S.App.D.C. 211, 265 F.2d 585. For the purposes of our case we see no inconsistency with what we have just stated and the provisions of that case. We are strongly persuaded, however, by Superior Derrick Corp. v. N. L. R. B., 5 Cir., 273 F.2d 891, an opinion filed January 21, 1960 by Circuit Judge Brown. In that case he says:

"* * * By its nature, however, the purpose or intent of the picketing is not something which may be evaluated mechanically." "Congress did not declare its prohibition in terms of effect. It legislated in terms of motive and purpose on the part of the active primary unions setting up the picket line." 273 F.2d 896.

It is to be noted that in the Salt Dome case the complaining party Todd was a secondary employer, and in many of the cases which we have read we find the underlying problem to be that there was a disturbance of the normal employer-employee relationship of the secondary or tertiary party brought about by the primary dispute. We note that in our case that is not so. There is no evidence here that any employer-employee relationship was disturbed by the acts of this respondent. Nevertheless, as aforesaid, certain principles of what picketing is permissible at the "situs", and we refer again to the Moore Drydock case, and invoke the principle of what is reasonable or unreasonable. Admittedly in the case before us, and we believe under the law, respondent had every right to distribute leaflets and to exert economic pressure and to do the other acts which he has done to accomplish recognition. Under the circum-

2. The picketing was held not to violate Section 8(b) (4) (A) of the Act if:
"(1) the picketing was strictly limited to times when the situs of the dispute is located on the secondary employer's premises;
"(2) at the time of the picketing the primary employer was engaged in its normal business at the situs;

"(3) the picketing is placed as reasonably close to the location of the situs as possible, and
"(4) the picketing discloses clearly that the dispute is with the primary employer and not with the secondary employer."

stances of this case, however, we do not believe that the "situs" extended from the pier to the truck entrance, particularly when effective picketing was going on by boat immediately adjacent to the pier.

In passing on the final question before us we take into consideration Section 10($l$) of the Act.[3] We recognize that any action we take would be interlocutory only to the determination of the unfair labor practice matter pending before the Board. In making our decision we are not bound by the normal rules of equity involving injunctions but here determine only whether it is proper that the respondent be enjoined pending further action by the Board and whether there is reasonable cause to believe that there has been a violation of the Act. As we have previously stated, there is not any reasonable cause to believe that the Act has been violated by these respondents except that they have extended the "situs" of lawful picketing and we will, therefore, enter an Order consistent with that finding.

### Conclusions of Law.

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding, and under Section 10($l$) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10($l$) of the Act.

(b) Gellenthin is engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(c) Esso, Sinclair, Allied, Expressway, Calso, and Consumers are engaged in commerce or in an industry affecting commerce.

(d) Respondent has engaged in unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii), subparagraph (B), of the Act, affecting commerce within the meaning of Sections 2(6) and (7) of the Act, limited, however, only to the fact that they have extended the "situs" of their picketing, but a continuation of this practice will impair the policies of the Act as set forth in Section 1(b) thereof.

3. To preserve the issues for orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the

---

**3.** Section 10($l$) of the Act provides, in pertinent part, as follows:

"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B) or (C) of section 8(b), or section 8(e), or section 8(B) (7), the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer of regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court (including the District Court of the United States for the District of Columbia) within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: * * * Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony: *Provided further* That for the purposes of this subsection district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in promoting or protecting the interests of employee members * * * "

Board, respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission, continuation, or repetition of picketing at the truck entrances to the plants and refineries or piers mentioned in the proceedings or at any other point or place where the pickets cannot be seen from the pier or from the location of the tugs or barges employed and used by Gellenthin in the normal course of his business.

## Order Granting Temporary Injunction.

This cause came on to be heard upon the verified petition of Bennet F. Schauffler, Regional Director of the Fourth Region of the National Labor Relations Board, for and on behalf of said Board, for a temporary injunction pursuant to Section 10($l$) of the National Labor Relations Act, as amended, pending the final disposition of the matters involved pending before said Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. The Court, upon consideration of the pleadings, evidence, briefs, argument of counsel, and the entire record in the case, has made and filed its findings of fact and conclusions of law, finding and concluding that there is reasonable cause to believe that respondent has engaged in, and is engaging in certain limited acts and conduct in violation of Section 8(b) (4) (i) (ii) (B) of said Act, affecting commerce within the meaning of Sections 2(6) and (7) of said Act, and that such acts and conduct will likely be repeated or continued unless enjoined.

Now, therefore, upon the entire record, it is Ordered, Adjudged and Decreed that, pending the final disposition of the matters involved pending before the National Labor Relations Board, respondent Local 101, Marine Engineers Beneficial Association, AFL–CIO, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it or them, be, and they hereby are, enjoined and restrained from:

(a) Picketing at or in the vicinity of the truck entrances of Esso Standard Oil Company, Sinclair Refining Company, Allied Oil Co., Expressway Oil Terminal, Calso Oil Co., or Consumers Oil Co., or at or in the vicinity of the premises of them or any other person engaged in commerce when the area picketed cannot be seen and readily observed from the dock, pier or other landing where the tug or barge of Gellenthin is being operated.

(b) In addition to limiting its picketing, as aforesaid, the respondent is restrained from enlarging the picketing which it is now charged with carrying on beyond the scope of the "situs" now used and employed pending further order of the Court or conclusion of the matters now pending before the National Labor Relations Board.

(c) The Order hereby entered is without prejudice to either party and they may raise additional questions if the facts warrant it.

(d) The Court makes no order at this time relative to bargaining between Gellenthin Barge Lines, Inc. and Local 101, Marine Engineers Beneficial Association, AFL–CIO, or any other labor organization unless or until Local 101, Marine Engineers Beneficial Association, AFL–CIO, or such other labor organization has been certified as the representative of such employees under the provisions of Section 9 of the National Labor Relations Act, as amended.